IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLARENCE McNICKLES, | § § § | |
| Plaintiff, | § § | |
| V. | § § | C.A. No. _____ |
| | § | |
| CITY OF DALLAS, WILLIAM ORTEGA, and LARRY MOODY, | § § § § | |
| Defendants. | § § | |

## PLAINTIFF CLARENCE MCNICKLES' ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW, Plaintiff Clarence McNickles, and files Plaintiff's Original Complaint complaining of the Defendants City of Dallas, William Ortega, and Larry Moody, and would respectfully show the Court as follows:

### I.   PARTIES

1.1   Plaintiff Clarence McNickles is a permanent resident of the State of Texas within the Northern District of Texas.

1.2   Defendant, the City of Dallas, is a municipality located in Dallas County, Texas. The City of Dallas operates the Dallas Police Department ("DPD"),

Fire Rescue Department ("DFR"), and Dallas City Marshals ("Marshals"). Defendant City of Dallas may be served with citation by and through its agent for service of process, City Manager T.C. Broadnax, at 1500 Marilla 6A South, Dallas, Texas 75201.

1.3 Defendant William Ortega is a resident of Dallas, Texas. Defendant Ortega is being sued in his individual capacity and his official capacity as an employee of Defendant City of Dallas' DPD. Defendant Ortega may be served with process at the Dallas Police Department, 1400 S. Lamar St., FL 6, Dallas, Texas 75215 or wherever he may be found.

1.4 Defendant Larry Moody is a resident of Forney, Texas. Defendant Moody is being sued in his individual capacity and his official capacity as an employee of Defendant City of Dallas' DPD. Defendant Moody may be served with process at the Dallas Police Department, 1400 S. Lamar St., FL 6, Dallas, Texas 75215 or wherever he may be found.

## II. JURISDICTION

2.1 This Court's jurisdiction is based upon federal questions arising under the Constitution and laws of the United States. In particular, this case involves violation of 42 U.S.C. §1983, 42 U.S.C. § 12131-12134, 12182, 29 U.S.C. § 794 and the Due Process Clause under the Fourteenth Amendment of the United States Constitution.

## III.  VENUE

3.1   Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff McNickles' claims, as outlined in Sections 4 and 5 below occurred within the Northern District of Texas, and all the parties reside in this Northern District.

## IV.  STATEMENT OF FACTS

4.1   On or about August 18, 2018, Defendants William Ortega and Larry Moody of the Dallas Police Department, responded to a domestic disturbance call in Dallas, Dallas County, Texas.

4.2   Upon arrival, Defendants Ortega and Moody encountered Diamond Ross, who was incoherent and in need of help.

4.3   Defendants Ortega and Moody pushed Ms. Ross into the backseat of their vehicle. Shortly after being placed in the vehicle, Ms. Ross stated "I can't breathe." She began crawling towards the window where people outside of the police car were standing. As she reaches the closed window, a police officer opens the back door and pulls Ms. Ross by her ankles back to the other side of the back seat.

4.4   While detained, Ms. Ross showed she was in distress and in need of emergency medical attention:

    a.  Ms. Ross stated "I can't breathe" multiple times;

    b.  Ms. Ross requested an ambulance and paramedics;

    c. Ms. Ross requested and yelled for water approximately 14 times and was never provided with water after being held in the back of a car in Texas in August for an extended period of time;

    d. Ms. Ross yelled for help multiple times;

    e. Ms. Ross struggled to breathe throughout the time she was detained;

    f. Ms. Ross had difficulty answering basic questions such as what city she was in, what month it was, and whether she was allergic to any medication;

    g. Ms. Ross drifted in and out of consciousness while detained;

    h. Ms. Ross became completely unresponsive while detained; and

    i. Defendants Ortega and Moody believed that Ms. Ross was under the influence of drugs.

4.5  Dallas Fire Rescue paramedics arrived on the scene. Paramedics interacted with Ms. Ross but disregarded her complaints that she could not breathe and needed water.

4.6  Dallas Police Department officer also stated that he believed she may be under the influence of drugs.

4.7  After nearly twenty minutes, Defendants Ortega and Moody transported Ms. Ross to Lew Sterrett Jail for outstanding city warrants.

4.8  Defendants Ortega and Moody did not put a seatbelt on Ms. Ross before transporting her to the Lew Sterrett Jail. Ms. Ross, who was handcuffed in the backseat, could not put her seatbelt on without assistance.

4.9     During the drive to Lew Sterrett Jail, Ms. Ross gasped for air and went in and out of consciousness.

4.10    Upon arrival at the Lew Sterrett Jail, Ms. Ross was unconscious and unresponsive. Defendants Ortega and Moody instructed Ms. Ross to wake up. Defendants Ortega and Moody questioned if she was still breathing but did not confirm whether she was breathing.

4.11    Defendants Ortega and Moody failed to request medical assistance for Ms. Ross.

4.12    Instead, Defendants Ortega and Moody dragged the unconscious and unresponsive Ms. Ross into the detention facility.

4.13    Ms. Ross was dragged into a holding cell by her handcuffed arms. Defendants Ortega and Moody dropped the unresponsive Ms. Ross on the floor of the holding cell.

4.14    Defendants Ortega and Moody ignored Ms. Ross as she laid motionless face down in the holding cell. Throughout this time, Ms. Ross was visible to Defendants Ortega and Moody.

4.15    Defendants Ortega and Moody placed Ms. Ross' limp body into a wheelchair. She was completely unresponsive while being placed in the wheelchair.

4.16    Defendants Ortega and Moody continued to ignore the unresponsive Ms. Ross.

4.17   Twelve minutes after arriving at the Lew Sterrett Jail, Defendants Ortega and Moody requested paramedic assistance. Ms. Ross was then transported to Baylor Hospital where she was declared dead. Ms. Ross was 34 years old at the time of her death.

4.18   But for, Defendants' failure to render medical assistance Ms. Ross would not have died.

4.19   Plaintiff Clarence McNickles, Ms. Ross' father, suffered injuries and damages due to the wrongful death of his daughter.

## V.   CAUSES OF ACTION

5.1   This case is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §12131, and 29 U.S.C. § 794a.  Paragraphs 1.1 to 4.18 are incorporated as though restated verbatim.

5.2   The City of Dallas is a municipality subject to a suit for damages pursuant to 42 U.S.C. §1983.  The Dallas Police Department and Dallas Fire Rescue are departments of the City of Dallas, and the City of Dallas is ultimately responsible for the acts and omissions of the Dallas Police Department and Dallas Fire Rescue. The Dallas Police Department functions through those individuals empowered by it with authority as police officers, including Defendants Ortega and Moody. Defendants Ortega and Moody were acting within the course and scope of their employment as police offers employed by the City of Dallas.

5.3     Each of the Defendants exercised power possessed by virtue of state law and made possible only because each Defendant is clothed with the authority of state law, which permits municipalities, such as the City of Dallas, to establish police departments, such as the Dallas Police Department, and allows police departments to clothe individuals such as Defendants Ortega and Moody with the authority of state law by designating them as police officers.

5.4     Each of the Defendants individually and in combination violated the due process rights of Diamond Ross, as guaranteed by the Fourteenth Amendment to the United States Constitution. Diamond Ross died as a result of the Defendants' violations of her constitutional rights.

**Failure to Render Medical Aid**

5.5     The Due Process Clause of the Fourteenth Amendment protects an arrestee's right to not have her serious medical needs met with deliberate indifference by arresting officers. Defendants Ortega and Moody violated Ms. Ross' right when they acted with deliberate indifference Ms. Ross' serious medical needs.

5.6     Defendants Ortega and Moody had subjective knowledge of substantial risk of serious harm to Ms. Ross because:

    a.  Ms. Ross stated "I can't breathe" multiple times;

    b.  Ms. Ross requested an ambulance and paramedics;

    c. Ms. Ross requested and yelled for water approximately 14 times and was never provided after being held in the back of a car in Texas in August for an extended period of time;

    d. Ms. Ross yelled for help multiple times;

    e. Ms. Ross struggled to breathe throughout being held for arrest;

    f. Ms. Ross had difficulty answering basic questions such as what city she was in, what month it was, and whether she was allergic to any medication;

    g. Ms. Ross drifted in and out of consciousness while detained;

    h. Ms. Ross became completely unresponsive while detained; and

    i. Defendants Ortega and Moody believed that Ms. Ross was under the influence of drugs.

Defendants Ortega and Moody were aware of these facts. Defendants Ortega and Moody could hear Ms. Ross call out for help, water, and that she could not breathe. Defendants Ortega and Moody observed Ms. Ross struggle to breathe, drift in and out of consciousness, and become completely unresponsive. These facts raise an inference of substantial risk of serious harm.

    5.7    Defendants Ortega and Moody acted with wanton disregard to Ms. Ross' serious medical need because Defendants Ortega and Moody were aware of the facts outlined in paragraph 5.6 yet failed to provide medical care to Ms. Ross even after she was completely unresponsive for several minutes.

5.8   The delay in providing medical care to Ms. Ross resulted in substantial harm because Ms. Ross died due to the lack of medical care. Had Defendants Ortega and Moody transported Ms. Ross to a hospital she would have been provided with fluids, monitoring of her respiratory system, diagnosis of risk of drug overdose, and intervention to prevent death or serious injury from accidental drug overdose.

**Cause of Action Against City of Dallas**

5.9   Defendant the City of Dallas, acting through the Dallas Police Department, violated 42 U.S.C. §1983 when it violated Diamond Ross' due process rights under the Fourteenth Amendment and right to be free from unreasonable seizure under the Fourth Amendment of the Constitution of the United States of America.

5.10   The City of Dallas delegates policy decisions and policy making regarding law enforcement to Dallas Police Department, Chief of Police, Renee Hall, and/or the Dallas City Council.

5.11   The City of Dallas delegates law enforcement training and policy to Dallas Police Department Chief, who is the final policymaker for the City of Dallas in this area as shown by:

   a. Statements made to the press by City Council members Carolyn Davis and Dwaine Caraway indicated that the City Council is not involved in creating Dallas Police Department training policies. In the aftermath of multiple police shootings against non-threatening individuals, Councilman Caraway did not state that the City Council needed to formulate new training policies.

      Rather, WFAA reported on December 12, 2013, that he stated that the City Council needed a better understandingand needed to ask more questions. Likewise, the Dallas Morning News reported on July 25, 2012, that Councilwoman Davis stated that she did not have sufficient knowledge of police training to comment on police behavior.

  b. The City Council has stated that the Dallas Police Department Chief is responsible for creating and implementing Dallas Police Department training procedures. After several six figure settlements between the City of Dallas and victims of excessive force and other police misconduct, Councilman Caraway stated to FoxDFW on December 4, 2013, that Chief Brown needed to fix the issue. Councilman Caraway did not suggest that the City Council needed to or should act to improve law enforcement policy.

  c. The City Council's failure to create or mandate articulable Dallas Police Department policy or training. Instead, such decisions have been made and implemented by the Dallas Police Department Chief. Thus, the Dallas Police Department Chief is effectively the final policymaker for law enforcement policy in the City of Dallas.

4. The City of Dallas delegated policy making authority to the Dallas Police Department and the Chief of Police and/or Dallas City Council expressly in the City of Dallas Charter Chapter XII.

5.12 Alternatively, the Dallas City Council is the final policymaker in regarding law enforcement training and policy per the Dallas City Charter.

5.13 Alternatively, Dallas City Council and Chief Brown are both final policymakers for the City of Dallas in areas of law enforcement training and policy. Municipalities frequently delegate final policymaking authority across different

officials and entities. Here, the Dallas City Council and Chief Hall both create and promulgate final law enforcement policies for the City of Dallas.

5.14   At the time of the incident in question, the City of Dallas' official policy and/or the City of Dallas' custom having the force of official policy did not require adequate supervision of detainees with medical emergencies, did not require immediate medical care for a detainee experiencing a drug overdose, and/or did not require adequate staff with medical training present to appropriately and promptly respond to medical emergencies. The City of Dallas failed to adequately train its police officers to properly and promptly respond to medical emergencies. The final policy maker for the City of Dallas had actual and/or constructive knowledge of this.

5.15   But for the failures of the City of Dallas' official policies and/or customs having the force of official policy, Ms. Ross would have received prompt medical care and would not have died in custody.

**ADA**

5.16   Ms. Ross had mental illness and is a qualified individual with a disability pursuant to 42 U.S.C. §12131(2). The Dallas Police Department knew that Ms. Ross had a mental illness and was under the influence of drugs at the time of her arrest.

5.17   Title II of the ADA applies to the City of Dallas. Title II affirmatively requires that governmental agencies modify and accommodate their practices,

policies, and procedures as necessary to avoid discriminating against individuals with disabilities or denying disabled individuals meaningful access to public services.

5.18   The City of Dallas is a public entity and its police department qualifies as a program and service for purposes of Title II of the ADA.  The City of Dallas receives federal funds through grant programs and reimbursement for police and emergent medical services provided to federal agencies.  This was the case at the time Ms. Ross was arrested.

5.19   Ms. Ross, by reason of her disability, was denied the benefits of a safe interaction the police, safe access to medical care, or was subjected to discrimination by the City of Dallas when Defendants Ortega and Moody disregarded her need for medical aid.

5.20   At all times material herein, Defendant City of Dallas' acts and omissions outlined show gross misjudgment or bad faith in discriminating against Ms. Ross solely by reason of her disability.

5.21   Defendant City of Dallas failed to comprehensively evaluate Ms. Ross' specific needs and to provide tailored appropriate services to him.  Defendant City of Dallas failed to:

> 1.   Instruct and train its officers on lawful, appropriate, and effective use of force against the mentally ill and those experiencing a possible drug overdose;

    2.    Dispatch officers who had received advanced specialized training in interacting with mentally ill persons;

    3.    Send a crisis intervention team upon a civilian's request;

    4.    Modify and accommodate police department operations and services for Ms. Ross ensuring safe transport to a health facility, and educating and training officers in the care of mentally ill persons;

    5.    Conduct a self-evaluation plan under the ADA, and then failing to modify its programs and services to accommodate the needs of persons with mental illnesses, such as Ms. Ross, when called upon to provide services in a crisis situation.

5.22   Each of these failures singularly and in combination constitutes discrimination against Ms. Ross, as a mentally ill individual, in the provision of services by the City's police department, on the basis of her disability, by not accommodating her mental disability.

5.23   Defendant City of Dallas' discrimination was a proximate or producing cause of Ms. Ross' injuries and damages.

5.24   Each failure outlined singularly and in combination deprived Ms. Ross of the benefits of safe interaction with the police and safe access to medical care.

5.25   Plaintiff seeks damages under Title II of the ADA. 29 U.S.C. §794a.

**Rehabilitation Act**

5.26   Ms. Ross had mental illness and is a qualified individual with a disability pursuant to 29 U.S.C. § 705(20).

5.27     The City of Dallas has been, and is, a recipient of federal funds. Thus, the City of Dallas must comply with Section 504's mandate. Section 504 of the Rehabilitative Act requires that federal money recipients reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

5.28     The City of Dallas is a public entity and its police department qualifies as a program and service for purposes of Section 504 of the Rehabilitation Act.

5.29     Ms. Ross was otherwise qualified to utilize Dallas Police Department services.

5.30     As a member of a vulnerable population, Ms. Ross, solely by reason of her disability, was denied the benefits of a safe interaction with the police and safe access to medical care, or was subject to discrimination in her interaction with the police when her serious need for prompt medical care was ignored resulting in Ms. Ross' death.

5.31     At all times material herein, City of Dallas knew or was reasonably expected to know of Ms. Ross' disability. DPD officers stated that they knew she had a drug addiction and was under the influence of drugs at the time of her arrest.

5.32     At all times material herein, Defendant City of Dallas' acts and omissions under the circumstances show gross misjudgment or bad faith in discriminating against Ms. Ross solely by reason of her disability.

5.33  At all times material herein, Defendant City of Dallas' acts and omissions under the circumstances show gross misjudgment or bad faith in depriving Ms. Ross, by reason of her disability, of the benefits of safe interaction with the police and safe access to medical care.

5.34  Defendant City of Dallas' discrimination was a proximate or producing cause of Plaintiff's injuries and damages.

5.35  Defendant City of Dallas' denial of the benefits of safe interaction with the police and safe access to medical care was a proximate and/or producing cause of Plaintiff's damages.

5.36  Plaintiff is entitled to damages under Section 504 of the Rehabilitative Act.

## VI.  DAMAGES

6.1  Clarence McNickles is the surviving father of Ms. Ross.  As the surviving father, Mr. McNickles is entitled to bring this action for his daughter Diamond Ross's wrongful death under Texas Civil Practice and Remedies Code §71.001-§71.012.

6.2  Clarence McNickles enjoyed regular contact with his daughter. He took her out to eat and enjoyed regular conversations with his daughter, both in person and by telephone.  As a result of his daughter's premature and wrongful death, Mr. McNickles has suffered extreme grief in the past that in reasonable likelihood will

continue in the future. Mr. McNickles buried his daughter; it is supposed to be the other way around. He has suffered mental anguish that has occurred in the past and in reasonable likelihood will continue in the future, and he has suffered loss of the parent-child relationship and all that it entails, both in the past and in the future. As a result, Mr. McNickles, individually, is entitled to damages from the Defendants for his past and future mental anguish and his past and future loss of the parent-child relationship.

## VII.   ATTORNEY'S FEES

7.1   Plaintiff seeks costs of this action and reasonable attorney's fees as provided by 42 USC section 1983.

## VIII.   PRESERVATION

8.1   The City of Dallas has sole control of evidence relating to Ms. Ross' death.

8.2   The Defendants are hereby given notice that any document or other material, including electronically stored information, that may possibly be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

## IX.   CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

9.1   Plaintiff Clarence McNickles claims interest in accordance with applicable law.

## X.     PRAYER

10.1   WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff recover all his damages as specified above from Defendants, jointly and severally, plus costs of Court, pre-judgment and post-judgment interest at the legal rate, and have such other and further relief, general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and circumstances.

Respectfully submitted,

TURLEY LAW FIRM

*/s/ Lacey Turley Most*
Lacey Turley Most
State Bar No. 24093225
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: laceym@wturley.com
davette@wturley.com

ATTORNEY FOR PLAINTIFF